IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MARTINO TAYLOR,

     Plaintiff,

v.                               No. 04-2722 B

UNITED PARCEL SERVICE, INC.,

     Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DISMISSING CASE
_____

INTRODUCTION

     This lawsuit has been brought by the Plaintiff, Martino Taylor, against his employer, the

Defendant, United Parcel Service ("UPS"), alleging discrimination based on race in violation of Title

VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, et seq., 42 U.S.C.

§ 1981 and the Tennessee Human Rights Act (the "THRA"), Tennessee Code Annotated § 4-21-101

et seq.   The Defendant seeks summary judgment under Rule 56 of the Federal Rules of Civil

Procedure as to all claims.

STANDARD OF REVIEW

     Rule 56(c) provides that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers
> to interrogatories, and admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that the moving party is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91

L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir.

1988).  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324, 106 S.Ct. at 2553.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 586, 106 S.Ct. at 1356.  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322, 106 S.Ct. at 2552.  In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." <u>Lord v. Saratoga Capital, Inc.</u>, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1478 (6th Cir. 1989)).  The "judge may not make credibility determinations or weigh the evidence." <u>Adams v. Metiva</u>, 31 F.3d 375, 379 (6th Cir. 1994).

FACTS AND PROCEDURAL BACKGROUND

The following facts are undisputed unless otherwise noted.  Taylor, a black male, began working for UPS on June 22, 1994 as a part-time loader at its Carrier Street facility in Memphis, Tennessee.  He later transferred to the Defendant's Oakhaven location and on June 18, 2001 became

2

a full-time employee.  At all times during his employment with UPS, Taylor has been a member of the bargaining unit represented by Local 667 of the International Brotherhood of Teamsters and was, therefore, subject to its collective bargaining agreement (the "CBA") with UPS.

Generally, under the CBA, a job opening would be placed up for bid and be awarded to the bidder with highest seniority.  In May 2003, Taylor was designated an "Article 22.3" inside/inside combination employee, which meant that he worked in a full-time position created by combining two part-time jobs--in his case stocking parts in the automotive department and loading package cars on the preload sort--both of which involved working inside the UPS facility.  Pay rates for Article 22.3 inside/inside employees were governed by Article 41 of the CBA, while pay scales for air operation positions are determined under Article 40.

In May 2003, all Article 22.3 positions at the Oakhaven facility were rebid pursuant to the CBA, including the Plaintiff's.  Taylor and others bid on the position held at the time by the Plaintiff. The position was awarded to Roger Roberson, a white male.  On May 2, 2003, the Plaintiff filed a grievance referring to the awarding of his position to Roberson and alleging that certain white managers were "making their own rules of the contract" and that he believed he was being "harassed and discriminated against."  The grievance was denied.  Taylor also bid on a Hazmat Responder position as his second choice, which was also awarded to another individual.  Finally, the Plaintiff bid on and received a position in the overgoods department and in the hub as an unloader.  Like his previous job, this was also an Article 22.3 position.

In October 2003, Taylor bid on and was awarded another Article 22.3 position--an air/inside job with an air delivery component.  Because the position contained an air component, the employee to which it was awarded was to be paid pursuant to Article 40 of the CBA.  It is the position of the

Defendant that this change in relevant pay scale, from Article 41 to Article 40, resulted in the Plaintiff's case in a decrease in pay by approximately $3.00 per hour.  Conversely, the Plaintiff insists that the reasons for the lesser pay were his race and the filing of the May 2003 grievance. Taylor grieved the pay change, which was also denied.

According to UPS, employees classified as air/inside workers perform half of their duties in some aspect of UPS's air operation.  Taylor was designated as an "air driver" who delivers principally Next Day Air and Second Day Air packages.  The Plaintiff challenges the classification and submits that management in reality assigned him to perform inside/inside jobs and never gave him the opportunity to drive.  He avers that, since he was actually performing inside/inside duties and not doing any work in air, he should have been paid the higher rate of an inside/inside employee under Article 41 rather than the lower Article 40 rate.  UPS acknowledges that, when there was an insufficient volume of work to justify dispatching all its drivers, the least senior air drivers, like Taylor, were instead assigned inside work.  Their categorization as "air/inside combination" employees remained the same, nonetheless, with wages paid under Article 40.

In 2004, Terrance Washington, a black male, became Taylor's manager.  UPS concedes that changes in management may have resulted in new managers not being aware of Taylor's status as an air/combination employee, but it argues it was his responsibility to make it known.  Although the Plaintiff disputes UPS's contention that he never informed Washington of his air combination status, he does not recall whether he did so.  The Defendant avers that, as a result, Washington gave air work to other employees with less seniority.  Taylor also disputes this assertion, submitting that he was told by other supervisors that no work was available even though it was the business's peak season.  Later, when management again changed and the new manager became aware of Taylor's

air/combination classification, he was offered training and refused.  The Plaintiff contends that the

reason for his refusal was a fear that he would lose seniority.  When it became apparent that Taylor

had been performing inside/inside work, the union requested the position be rebid under the CBA.

<u>LAW AND ANALYSIS OF PLAINTIFF'S CLAIMS</u>

Section 1981 provides in pertinent part that

[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  Similarly, Title VII prohibits employers from "discriminat[ing] against any

individual with respect to his compensation, terms, conditions, or privileges of employment because

of such individual's race . . ."  42 U.S.C. § 2000e-2(a)(1).  Under either statute, Taylor may

withstand the motion for summary judgment either by presenting direct evidence of discrimination

or by presenting circumstantial evidence, utilizing the evidentiary framework set forth in <u>McDonnell</u>

<u>Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and <u>Texas Department</u>

<u>of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), from which

a jury could draw an inference of discriminatory motive.[1]  <u>See</u> <u>Seay v. Tenn. Valley Auth.</u>, 339 F.3d

454, 463 (6th Cir. 2003); <u>Wade v. Knoxville Util. Bd.</u>, 259 F.3d 452, 461, 464 (6th Cir. 2001).

---

[1]The Plaintiff's THRA claim is to be analyzed in the same manner as the Title VII and § 1981 claims.  As the Tennessee Supreme Court has noted, "[a]lthough the language differs slightly, it is clear that the legislature intended the THRA to be coextensive with federal law. We, therefore, may look to federal interpretation of Title VII for guidance in enforcing our own anti-discrimination statute."  <u>Phillips v. Interstate Hotels Corp. No. L07</u>, 974 S.W.2d 680, 683-84 (Tenn. 1998) (internal citation omitted); <u>see also</u> <u>Wade v. Knoxville Util. Bd.</u>, 259 F.3d 452, 464 (6th Cir. 2001) (applying same standard to claims under Title VII, § 1981 and the THRA).

5

Where direct evidence is not available, as is the case here, a plaintiff may, utilizing the McDonnell Douglas/Burdine analysis, create an inference of discrimination based on introduction of evidence supporting a prima facie case of discrimination based on race, that is:  "(1) he was a member of a protected class; (2) he suffered an adverse employment action; . . . (3) he was qualified for the position" he held and (4) he was "treated differently than similarly situated, nonprotected employees."  Noble v. Brinker Int'l, Inc., 391 F.3d 715, 728 (6th Cir. 2004), cert. denied, ___ U.S. ___, 126 S.Ct. 353, 163 L.Ed.2d 62 (2005); Wade, 259 F.3d at 461.  A prima facie case of retaliation may be established on a showing that the plaintiff (1) engaged in protected activity; (2) the action was known by the defendant; (3) the defendant thereafter took adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action.  Akers v. Alvey, 338 F.3d 491, 497 (6th Cir. 2003); Wade, 259 F.3d at 463.

Once the plaintiff has established the prima facie case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its actions.  McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824.  If the employer carries its burden of production, the presumption raised by the plaintiff's prima facie case is rebutted.  A plaintiff must then prove, by a preponderance of the evidence, that the employer's stated reasons for the employment action were pretextual.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 518-19, 113 S.Ct. 2742, 2753-54, 125 L.Ed.2d 407 (1993).

In this action, the Plaintiff charges race discrimination and retaliation based on (1) a reduction in pay following his successful bid for the air/combination job in October 2003; and (2)

the Defendant's refusal to train him to perform the air portion of the air/combination position.[2]  For

the sake of clarity, the Court will address the claims in reverse order.

With respect to the alleged refusal to train, UPS does not suggest that Taylor has failed to

demonstrate the first or third elements of the discrimination claim.  As to the remaining prongs, it

first contends the Plaintiff cannot establish a prima facie case for discrimination because any failure

to train him did not rise to the level of an "adverse employment action."  An adverse employment

action must be a *materially* adverse change in the terms or conditions of plaintiff's employment

caused by the employer's actions.  Bowman v. Shawnee State Univ., 220 F.3d 456, 461-62 (6th Cir.

2000).  Thus, in order to be actionable, the adverse action must be sufficiently severe.  See Halloran

v. Minn. Old Ne. Agents Ltd. P'ship, 58 F.Supp.2d 831, 841 (W.D. Tenn. 1999).

> A materially adverse change in the terms and conditions of employment must be
> more disruptive than a mere inconvenience or an alteration of job responsibilities.
> A materially adverse change might be indicated by a termination of employment, a
> demotion evidenced by a decrease in wage or salary, a less distinguished title, a
> material loss of benefits, significantly diminished material responsibilities, or other
> indices that might be unique to a particular situation.

Bowman, 220 F.3d at 461-62.  A denial of training may be considered an adverse employment

action where it results in a loss of benefits.  See Douglas v. Caldera, 29 F.App'x. 257, 258-59 (6th

---

[2]In the instant motion, the Defendant, along with seeking summary judgment on these claims, requests disposition of a claim set forth in Taylor's charge filed with the Equal Employment Opportunity Commission concerning being "bumped" from his Article 22.3 inside/inside position in May 2003.  The argument is presented out of an abundance of caution as, UPS explains, the claim was not included in the Plaintiff's amended complaint.  In his response to the motion, the Plaintiff advises that "For the Purpose [sic] of this Motion, Mr. Taylor will not dispute the arguments as they pertain to any issues regarding Mr. Taylor being bumped into a different Article 22.3 position because the primary issues surround [sic] his complaint is the reduction in pay and the failure to train Mr. Taylor for the Article 40 air combination position."  The Court assumes, therefore, that the Plaintiff has abandoned this claim.

Cir. 2002).

It is undisputed that Taylor's wages were decreased by $3.00 per hour after he moved to the air/combination job. Viewing the evidence in the light most favorable to the Plaintiff, a finder of fact could infer that the employer's failure to provide training may have led to the salary reduction. Thus, the Court finds that Taylor has succeeded in establishing an adverse employment action. See id.

The Plaintiff has failed to show, however, that he was treated differently from white employees who were similarly situated. As the Sixth Circuit explained in Clayton v. Meijer, Inc., 281 F.3d 605 (6th Cir. 2002),

> it is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly situated *in all respects*. . . . [T]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated"; rather the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the *relevant* aspects." . . . [T]his Court has asserted that in applying the standard that plaintiff must show that he is treated differently than similarly situated employees from outside the class courts should not demand exact correlation, but should instead seek relevant similarity.

Clayton, 281 F.3d at 610-11 (internal citations and quotation marks omitted) (emphasis in original). While Taylor identified a white male--Steve West--in his deposition as a less senior employee who drove air, he has offered no evidence beyond a bald assertion in his response to the motion for summary judgment that West was similarly situated. Further, the Plaintiff's suggestion that summary judgment is not warranted because *UPS* has failed to come forward with proof of the existence of similarly situated individuals is specious, as it is the sole burden of the Plaintiff to do so, not the Defendant. See Noble, 391 F.3d at 728 (the burden of demonstrating the prima facie case lies with the plaintiff).

8

Nor has Taylor presented sufficient evidence to survive summary judgment on his retaliation claim for failure to provide air training.  In his response to the dispositive motion with respect to this claim, he simply refers the Court to his argument concerning retaliation as to wages.  However, that discussion points to no evidence whatever to suggest that any alleged *refusal to train* Taylor was retaliatory.  Accordingly, the unsupported claim must fail.

At this point, the Court turns to the question of whether the reduction in pay was based on race or in retaliation for grievances filed by the Plaintiff against UPS management.  In doing so, the Court notes that the section of the Plaintiff's response under the heading "Mr. Taylor can establish a prima facie case of discrimination and retaliation resulting from his pay reduction after he successfully bid on the 'air/inside' combination position" contains argument only pertaining to the elements of the retaliation claim.  Therefore, the Court must assume that Taylor has also abandoned his claim of discrimination as to the pay reduction.  Consequently, the Court is left only with the claim of retaliation in reducing salary.

The essence of this assertion is that UPS labor manager Walt Dickson and human resources manager T. J. Harper, angered by his filing a grievance against them, illegally acted to decrease his wages after he successfully bid for the air/combination job.  According to the Plaintiff, the grievance, filed against Dickson, Harper and auto manager John Trevitt, constituted "protected activity" and, thus, satisfies the first element of the retaliation claim.  He alleged therein that these white managers were "making their own rules of the contract" and that he was being "harass [sic] and discriminated against."  The grievance apparently stemmed from the awarding of his Article

9

22.3 position to Roberson, a white male with more seniority.[3]   As the filing of a grievance is considered "protected activity," the Plaintiff has established the first element of the retaliation claim. See Gliatta v. Tectum, Inc., 211 F.Supp.2d 992, 1003 (S.D. Ohio 2002) (a grievance filed with the employer is a protected activity).  The third element is also satisfied since, for the reasons set forth above, the reduction in pay qualified as an adverse employment action.

The second and fourth prongs are more problematic.  The bid posting for the air/combination position stated as follows:

> Employees who enter a full-time combination job shall be paid the appropriate full-time air rate for air driver work and the appropriate inside part-time rate for hours worked in other classifications.  If an employee has no established part-time rate, that employee will be paid in accordance with his/her company seniority.  All full-time package employees will be paid the top air rate of $18.25 or their progression rate if it is lower than $18.25.  All part-time employees will start at $13.00 for their air portion.  The inside rate of pay will be paid in accordance with Article 40 Section 6f.

(Decl. of T. J. Harper ("Harper Decl."), Ex. 1.)  Dickson testified in his deposition that

> A:    Whenever [Taylor] took the Article 40 [(the air/combination)] job, we had to go back and see what the established rate was that he had brought forward.  And that came from this chart.
>
> Q:    Okay.
>
> A:    And I think what happened, if I remember it correctly, is that initially they made a mistake and paid him on this chart, which is the skilled, which was the preload sorter rates, which he hadn't established previously.  And he was paid a dollar higher an hour for a period of time until I started to put the case together for the panel in I think it was December of 2003.  And when I looked at the rates and what his job classifications were, that he had never established the part-time skilled or preload sorter.  He only as a part-timer had established a rate as an other employee.  And so when you look at that wage schedule, 11/9 of '93 through 7/31 of '94 and follow it across, whenever he took the job, the rate that's in place for all employees that are part-time or

---

[3]As noted previously herein, the Plaintiff has apparently opted not to pursue this alleged "bumping" incident.

have a part-time rate at that time was [$]15.85.

(Dep. of Walter R. Dickson III at 63-64.)  In his declaration, Harper made the following assertion:

> When an employee changes classifications [as Taylor did in going from an
> inside/inside worker to an air/inside combination employee], [Harper] record[ed] the
> change on a job reclassification form which is submitted into [UPS's] Global
> Employee Management System.  The information is then uploaded from there to our
> payroll department in Dallas, Texas.  [He does] not inform the payroll department
> about an employee's race or whether the employee has made any complaints of
> discrimination, and [he did] not do so in this case.

(Harper Decl. at ¶ 11.)

While there is no indication that anyone in the payroll department in Dallas knew of the protected activity, it appears to be the position of the Plaintiff that these managers, who obviously did, directed the payroll department to act in effecting the reduction.  In support of the fourth prong-- the causal connection--the Plaintiff argues that, when reading the CBA in its entirety, it is clear the intent of the agreement was not to reduce employee pay and, therefore, that no contractual basis existed for the action, thereby leading to the assumption that animus must have been the cause.  He refers the Court to the following provisions of the CBA: "no employee shall be required to complete a full-time progression more than one (1) time even if he or she transfers between full time jobs"; "when a part-time employee bids to a full-time classification under this progression where the top rate of the full-time classification is less than his/her current rate, the employee shall be placed at the top rate of the new classification immediately"; and, under Article 40, "if a part-time employee bids to a feeder or package car driver position and the top rate of the classification is less than his/her current rate, the employee shall be placed at the top rate of the new classification immediately."  Taylor submits that, based on these portions of the CBA, a jury might believe that Dickson and Harper "made up their own rules" as to the contract.

11

The Court does not have sufficient information to interpret the CBA or to determine specifically whether Dickson and Harper followed the contractual provisions of the CBA to the letter.[4]  In any case, that is not the question to be answered here.  Rather, the Court must decide whether sufficient evidence has been presented to show that UPS management reduced the Plaintiff's pay in retaliation for filing the May 2003 grievance.

Even assuming the Plaintiff has satisfied the causation prong of the prima facie case for retaliation, see McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd., 440 F.3d 320, 335 (6th Cir. 2006) (burden of establishing a prima facie case of retaliation is not an onerous one), it is the opinion of this Court that he cannot pass the ultimate test in this case.  As the Court has outlined above, the Defendant has produced a legitimate, nondiscriminatory reason for the decrease in the Plaintiff's salary, which Taylor has utterly failed to establish was pretextual.

At this juncture, the Plaintiff must demonstrate, by a preponderance of the evidence, that UPS's stated reason for reducing his pay was a pretext for illegal conduct.  See Hicks, 509 U.S. at 518-19, 113 S.Ct. at 2753-54.  He "must introduce admissible evidence to show 'that the proffered reason was not the true reason for the employment decision' and that [retaliation] was the true motivation driving the employer's determination."  Barnes v. United Parcel Serv., 366 F.Supp.2d 612, 616 (W.D. Tenn. 2005) (citing Hicks, 509 U.S. at 508, 113 S.Ct. 2742).  Pretext may be shown by evidence that the defendant's stated reason had no basis in fact, did not actually motivate the decision or was not sufficient to motivate the employer's action.  See Manzer v. Diamond Shamrock

---

[4]The Court notes, however, that it may consider the grievance panel's denial of the reduction in pay challenge as persuasive evidence.  See Joostberns v. United Parcel Serv., Inc., No. 5:03-CV-108, 2004 WL 3457633, at *4 (W.D. Mich. Oct. 6, 2004), aff'd 166 F.App'x 783 (6th Cir. 2006).

Chem. Co. 29 F.3d 1078, 1084 (6th Cir. 1994), reh'g and suggestion for reh'g en banc denied (Sept. 22, 1994).  "[E]stablishing that the employer's reason was a pretext requires that a plaintiff do more than simply impugn the legitimacy of the asserted justification; in addition, the plaintiff must also adduce evidence of the employer's [retaliatory] animus."  Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 804 (6th Cir. 1994).  As the Supreme Court observed in Hicks, "[t]hat the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct."  Hicks, 509 U.S. at 523-24, 113 S.Ct. at 2756.  That is, "it is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation."  Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000) (citing Hicks, 509 U.S. at 519, 113 S.Ct. 2742) (emphasis in original).

Here, the Court finds there is no evidence demonstrating that the reduction in pay was a pretext for retaliation.  Even if management misread or misunderstood the CBA, that alone is not sufficient to establish pretext.  See Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996), cert. denied, 519 U.S. 1055, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997) ("the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with"; rather, it forbids them only from making decisions "for impermissible, discriminatory reasons").  At bottom, the essence of the Plaintiff's claim is that he was mistreated by members of UPS management because, in his mind, they wanted to get back at him for standing up for himself.  However, "a plaintiff's personal beliefs, conjecture and speculation as to the defendant's motivation," even if truly believed by the plaintiff, do not constitute competent evidence" of violative activity.  Marthel v. Bridgestone/Firestone, Inc., 926 F.Supp. 1293, 1300 (M.D. Tenn. 1996); see also Giles v. Norman Noble, Inc., 88 F.App'x 890, 895 (6th Cir. 2004) (subjective beliefs as to the defendant's motivation

is insufficient to establish pretext).

## CONCLUSION

For the reasons articulated herein, the Defendant's motion for summary judgment is GRANTED and this matter is DISMISSED in its entirety.  Further, the Clerk of Court is directed to deny as moot any and all outstanding motions and the Case Manager is to remove all settings in this case from the Court's calendar.

IT IS SO ORDERED this 24th day of May, 2006.


s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

14